JAMES T. McKEON, PLAINTIFF, v. THE DELAWARE, ETC., RAILROAD COMPANY ET AL., DEFENDANTS.

Argued October 9, 1924—Decided December 18, 1924.

1. An accident case resulted in a verdict for the plaintiff for $50,000.00. The evidence examined—*Held*, the evidence does not justify the setting aside the verdict as against the weight of the evidence. It is not so clear, as to give rise to an inference, that the verdict was the result either of mistake, passion or prejudice.

2. The newly-discovered evidence examined and *held*, that it is not of such a character that it would probably change the result, or probably produce on another trial the opposite result on the merits. The newly-discovered evidence has little or no value.

---

On rule to show cause.

Before Justices KALISCH, BLACK and CAMPBELL.

For the rule, *Frederic B. Scott.*

*Contra, Ward & McGinnis.*

The opinion of the court was delivered by

BLACK, J.   The trial of this case resulted in a verdict for the plaintiff for $50,000.   It was based upon the negligence of the defendant.   The accident occurred on the evening of September 27th, 1921, at or about eight forty-five P. M., at a railroad grade crossing, known as Mill street, in the city of Paterson.

The plaintiff's accident resulted in the loss of both legs. The right leg was amputated at the knee, the other leg about five inches below the knee.   At the point of the accident the defendants' railroad runs on a long, sweeping curve.   Mill street, at that point, crosses the railroad tracks at grade in a general easterly and westerly direction.   The plaintiff was injured, as is alleged, while attempting to cross the tracks of the railroad on foot, from the easterly side of the tracks to the westerly side.   The engine or train which is alleged to have struck the plaintiff came from the south, *i. e.,* it approached the plaintiff from the south and from his left.   It was on the first or westbound track.   The defendant set up as a defense that the plaintiff was either injured while walking along the tracks of the defendant railroad company, at a place not a public highway, contrary to the statute, or that he was injured while jumping on the train while in motion, and, therefore, guilty of contributory negligence.   Hence, the sharp issue of fact, which was submitted to the jury for solution by the trial judge, who told the jury, what is so clearly self-evident, that one or the other contentions of the parties must be untrue.   The jury, as stated, found in favor of the plaintiff.

The defendant obtained a rule to show cause why a new trial should not be granted, and writes down sixteen reasons for a new trial; one to six, that the verdict is against the weight of the evidence and that it is excessive; seven to sixteen, alleged trial errors in admitting or rejecting testimony in the charge to the jury and a refusal to charge the jury as requested, in writing, by the defendant.   All of these reasons we have considered and find it quite unnecessary to enter into any extended discussion of them, except as to two,

viz., that the verdict is contrary to the weight of the evidence and that it is excessive.

The undisputed testimony shows that the defendant had provided and maintained gates at the crossing on Mill street, which were in charge of a flagman named Nolan, one of the defendants. There is at that point a flagman's shanty ten feet high; a coal box five feet high close to the shanty gates; telephone poles along the line of the railroad tracks, all of which tended to obstruct the view to the south, the direction from which the train came, until one crossing at Mill street could be cleared of the gates. The gate hinge from the gate shanty is about two feet. The gate hing or gates about seven feet from the nearest rail of the track. The plaintiff's testimony on the points at issue consists of himself, who testified that he did not see any train; that no warnings or signals were given of an approaching train, and that he heard no noise; that there was no attempt to lower the gates, and no lights on the approaching engine and no whistle was blown or bell rung. A witness, James Flanagan, said he was a few feet behind the plaintiff when he was struck. A witness, James McGaw, whom the other two witnesses had just left. He was standing on the Clay street bridge one hundred and twenty or two hundred feet away, facing the plaintiff and the witness James Flanagan; he said McKeon, the plaintiff, was a little bit ahead of Flanagan at the time of the accident. Manifestly, the trial court could not have nonsuited the plaintiff on this testimony or directed a verdict in favor of the defendant. William Nolan, the flagman, was called as a witness, and testified that he put down the gates as the engine came by; that he saw the plaintiff and the witness Flanagan walk up from the bridge and then disappear toward the Mill street station. The defendant argues that because the plaintiff's version is so contrary to human experience and physical laws as to cause it to still refuse to believe that the plaintiff received the injuries in any other way than as a trespasser on one of its trains, that he fell off after unsuccessfully trying to steal a ride. Without attempting to analyze the evidence in detail, this is sufficient to indicate, in a gen-

eral way, the nature, sufficiency and effect of the evidence in the record. This court has many times announced the rule under which the evidence is to be tested, from which it can be ascertained that it is or is not against the weight of the evidence. Thus, to justify the setting aside of a verdict as against the weight of the evidence, it must be so clear as to give rise to an inference that the verdict was the result of mistake, passion or prejudice. *Queen* v. *Jennings,* 93 *N. J. L.* 353; *Boesch* v. *Kick,* 97 *Id.* 92.

The same rule is to be applied in determining whether the verdict rendered by the jury is excessive.

The plaintiff was twenty-seven years old; he earned $19 to $20 per week as a silk worker, and for one year previous to the injury he had been in the United States army. He lost both legs.

Tested by the rule above stated, the verdict cannot be set aside for the reasons discussed.

The defendant obtained two subsequent or supplemental rules, under which newly-discovered evidence was taken. Under the rule granted on September 17th, 1924, the plaintiff took the testimony of Sarah Richmond, who purported to have seen the accident; John Gregory, a state detective; John Richmond, the father of Sarah; Jacob S. Hogan, Lydia Allen, Emma Glick, Sidney J. Turner and Thomas E. Mahoney.

Assuming that the defendant has shown that due diligence was exercised to produce these witnesses at the trial, it is sufficient to say that a reading of the vital parts of this testimony leaves the mind in that state, which casts suspicion upon this testimony as being either mistaken nor untrue.

As was so aptly said by Vice Chancellor Van Fleet in the case of *Daggers* v. *Van Dyck,* 37 *N. J. Eq.* 130, 132, "Evidence, to be believed, must not only proceed from the mouth of a credible witness, but it must be credible in itself—such as the common experience and observation of mankind can approve as probable under the circumstances. We have no test of the truth of human testimony except its conformity to our knowledge, observation and experience."

This court has said, upon a rule to show cause why a verdict should not be set aside and new trial granted on the ground of newly-discovered evidence, that the newly-discovered evidence must be of such a character that it would probably change the result. It must be such evidence as would probably produce on another trial the opposite result on the merits. *Hoban* v. *Sanford, &c., Co.,* 64 *N. J. L.* 426, 437. It is inconceivable that the testimony taken under the rule of September 17th could or would produce any such changed result.

The question is one for the decision of the court before whom the rule to show cause is to be heard and determined. *Hoban* v. *Sanford, &c., Co., 64 N. J. L.* 426.

Under the second supplemental rule allowed, the testimony of a witness James Lockhart was taken on December 11th, 1924. This testimony calls for no discussion, as it throws no light upon the controverted points of this litigation. For the reasons above stated the three rules are discharged.