JAMES MONROE JONES, by ALTA L. VAN SKYKE, His Guardian, Appellant, v. PENNSYLVANIA RAILROAD COMPANY, a Corporation.— No. 38998.—182 S. W. (2d) 157.

Division One, July 3, 1944.

Rehearing Denied, September 5, 1944.

*Charles P. Noell* for appellant; *Douglas H. Jones* of counsel.

*Fordyce, White, Mayne, Williams & Hartman, E. C. Hartman* and *F. W. Schwarz* for respondent.

168

 VAN OSDOL, C.—Action for personal injuries under the Federal Employers' Liability Act, Title 45, U. S. C. A., sec. 51 et seq., and the Federal Safety Appliance Act, Title 45, U. S. C. A., sec. 1 et seq. Plaintiff was awarded $203,167 by the unanimous verdict of a jury. The trial court granted a new trial. Plaintiff has appealed.

The motion for a new trial was sustained upon the specified grounds as follows,

"12. Because the verdict is the result of passion and prejudice on the part of the jury.

"14. Because the verdict is so grossly excessive as to indicate that it was the result of passion and prejudice against the defendant on

the part of the jury and the result of sympathy for the plaintiff on the part of the jury.

"15. Because the verdict is so grossly excessive as to indicate that it was the result of passion and prejudice on the part of the jury against the defendant and of favor and partiality on their part for plaintiff.

"24. Because the verdict of the jury was arrived at not in accordance with the instructions of the Court and in accordance with the laws of the State of Missouri providing for jury trials, but, on the contrary, the jury ignored the instructions of the Court and the laws of the State of Missouri and brought in a verdict which is improper and illegal." (A memorandum, filed by the trial judge in connection with the order granting the new trial, states that the verdict is contrary to Instructions 5 and 6. These instructions cautioned the jury to consider the case as if between two private citizens; and to hear the evidence and arrive at a verdict without a bias, prejudice or feeling in favor of or against either party.)

At a former trial (a different judge presiding) plaintiff had been awarded the sum of $175,000 by the unanimous verdict of a jury. The trial court set aside the verdict and granted a new trial, the plaintiff having refused to file a remittitur of $50,000. Specified grounds upon which the first new trial was granted were as follows:

"11. Because the verdict is excessive.

"14. Because the verdict is so grossly excessive as to indicate that it was the result of passion and prejudice against the defendant on the part of the jury and the result of sympathy for the plaintiff on the part of the jury.

"15. Because the verdict is so grossly excessive as to indicate that it was the result of passion and prejudice on the part of the jury against the defendant and of favor and partiality on their part for plaintiff."

Plaintiff (appellant) herein contends, (1) that he, a plaintiff under the Federal Employers' Liability Act, by the granting of the second new trial, has been denied the right of trial of his case by a jury and so has been deprived of his property without due process of law, denied equal protection of the laws and denied a certain and speedy remedy in the courts (7th and 14th Amendments to the Constitution of the United States, and Sections 10, 28 and 30, Article II, Constitution of Missouri) ; (2) that Section 1169, R. S. 1939, Mo. R. S. A. sec. 1169, prohibits the trial court from granting a second new trial to the same party upon the ground that the verdict is against the weight of the evidence—the trial court's action in granting a second new trial to defendant on that ground is prohibited by the statute, and the order must be reversed and the verdict reinstated—the trial court granted both new trials upon the ground that the verdicts were against the weight of the evidence, it is argued by plaintiff, because the

trial court must have necessarily weighed the evidence in order to reach the conclusions that the successive verdicts were excessive; (3) and plaintiff further contends that the verdict was not excessive.

(1) and (2) It may be conceded that the plaintiff in an action under the Federal Employers' Liability Act who has availed himself of our state courts may in nowise be subjected to discriminatory action in the adjudication of his cause; and that the amount of an award of a jury for personal injuries is largely within the discretion of the jury exercised by the assessment of an award in amount within the limits of a fair and reasonable compensation as correctly defined by the instructions of the court.

In this state a trial court may, exercising sound discretion, allow one new trial only to either party, except where the triers of the fact shall have erred in a matter of law, or when the jury shall be guilty of misbehavior. Section 1169, supra.

However, courts have the power to keep awards within upper and lower limits of fair and reasonable compensation; and their action in correcting verdicts by the reduction of an excessive award had been upheld by the courts of England prior to the adoption of the Constitution of the United States (and of Missouri) and amendments thereto. Arkansas Val. Land & Cattle ■■■ Co. v. Mann, 130 U. S. 69, 9 S. Ct. 458; Blunt v. Little, 3 Mason 102. See also Dimick v. Schiedt, 293 U. S. 474, 55 S. Ct. 296. The exercise of this power is peculiarly within the sound discretion of the trial court inasmuch as that court may weigh the evidence as to the nature and extent of a plaintiff's injury and see the effect of the trial proceedings; the appellate court is reluctant to disturb the trial court's action in such exercise, unless it appears that the trial court has acted arbitrarily. Nevertheless, appellate courts have the power to and do reduce excessive verdicts. Mere excessiveness of the amount of the award is corrected in the trial court, and in this court, by remittitur, rather than by a retrial causing delay and expense. Goslin v. Kurn, 351 Mo. 395, 173 S. W. 2d 79; Weaver v. Mobile & O. R. Co., 343 Mo. 223, 120 S. W. 2d 1105; Cole v. St. Louis-San Francisco R. Co., 332 Mo. 999, 61 S. W. 2d 344; Kasperski v. Rainey (Mo. App.), 135 S. W. 2d 11. But a verdict of the jury which is permitted to stand (by the trial or appellate court) as reasonably compensatory, or (if excessive) as corrected by remittitur, presupposes a verdict resultant of the jury's unbiased, dispassionate and impartial consideration of the evidence.

Without considering the effect of the trial court's order sustaining the motion for a new trial (upon the plaintiff's refusal to file a remittitur) in the former trial of the case at bar, it is plainly seen that upon the second trial, in granting the new trial, the *trial court* held that the verdict was so grossly excessive as to indicate that it was the result of passion and prejudice of the jury. Cases cited by plaintiff which hold that a trial court is denied the power by

Section 1169, supra, to grant successive new trials upon the ground that the verdict is against the weight of the evidence are not helpful to us here.

There is a vital distinction between the specified ground, "because the verdict is excessive (or inadequate)" and the ground, "because the verdict is so grossly excessive (or inadequate) as to indicate that it was the result of bias and prejudice." The distinction is heretofore particularly noticed by this court in the case of Sofian v. Douglas, 324 Mo. 258, 23 S. W. 2d at page 129, trial courts "may pass on the weight of the evidence in considering the size of a verdict . . . ; whereas appellate courts do not weigh the evidence in reviewing a law case, . . . ; and in view of their better opportunity to measure the general effect of the trial proceedings on the jury, they (trial courts) *may infer prejudice and bias from the size of the verdict alone,* a thing which, as we have seen is held, appellate courts cannot do. In ruling the verdict in this case was so inadequate as to indicate prejudice and bias, *the trial court* necessarily concluded the verdict was for substantially less than it ought to have been under the evidence—in other words, it *held the verdict was so much against the weight of the evidence as to show bias and prejudice. On neither of these grounds* would this court be justified in interfering under the record" (our italics) of that case.

In considering each of the specified grounds the trial court may be said to have weighed the evidence, yet the reasons for sustaining the motions upon the respective grounds are essentially different. The specified ground, "because the verdict is excessive," is indicatory of no more than an honest mistake of the jury in the weighing of the evidence pertaining to the nature and extent of an injury and in assessing compensation therefor, whereas the specified ground, "because the verdict is so grossly excessive as to indicate that it was the result of bias and prejudice," savors of misbehavior on the part of the jury. A fair and impartial consideration of the evidence by the jury is vital to a verdict's incipient validity. King v. Mann, 315 Mo. 318, 286 S. W. 100; Chlanda v. St. Louis Transit Co., 213 Mo. 244, 112 S. W. 249; Bente v. Finley (Mo. App.), 83 S. W. 2d 155; Rigby v. St. Louis Transit Co., 153 Mo. App. 330, 133 S. W. 110; Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin, 283 U. S. 520, 51 S. Ct. 501; Brabham, Sheriff, v. State of Mississippi, for the Use of Smith et al., 96 F. 2d 210. Should the jury have been actuated by bias and prejudice in assessing the amount of the award, so may they have been actuated in their finding upon the issue of liability.

(3) We turn to a review of the evidence of the nature and extent of plaintiff's injuries.

Plaintiff, when injured, March 16, 1942, was eighteen years of age and in good physical condition. He had been employed as a brake-

man by defendant since the preceding January 14th. During the time employed by defendant, the plaintiff was paid ▓▓▓ the sum of $7.82 for eight hours. He was on the "extra board." Nevertheless, he had worked overtime and seven days a week for sufficient of the time that his pay aggregated $250 per month. Prior to his employ-ment by defendant, plaintiff had been employed by a filling station operator, and received the pay of $20 per week.

Plaintiff suffered his injuries as a result of being thrown from the brake platform of a car in a train operated by defendant. The cars of the train rolled over him dragging him several hundred feet. The wheels passed over his right leg, amputating it at the lower end of the upper third of the femur; his right thumb was entirely severed. Both hip joints were dislocated. There was a comminuted fracture about the neck and head of the right femur and the socket (acetabulum) into which the head of the femur should rest is now partially absorbed and destroyed. There were multiple fractures about the upper end of the left femur, the head of which has been taken out by surgery; the socket for the joint was partially destroyed. An X-ray of the lower end of the left femur shows evidence of atrophy, and the space about the knee joint is reduced. The left femur is infected at the site of the fracture and a diseased condition known as "osteomyelitis" is present with openings, or sinuses, at the surface of the hip through which foul-smelling pus is discharging. The upper ends of both femurs are thrust upward and fixed by growth (ankylosis) to the pelvic bones. On the head of the left humerus there is evidence of injury to the attachment of the tendons thereto. There was a com-minuted fracture involving the lower end of the left humerus and the upper end of the ulna (at the elbow). These two bones have united (ankylosed) and have practically fixed the joint at a right angle; plaintiff cannot extend the fingers of his left hand at the joints of the metacarpals and phalanges. The trunk of nerves called the "brachial plexus" has been injured and the nerve force to the left shoulder, arm and hand is consequently inhibited, causing an atrophy, or wasting, of those members and a clawlike contraction of the hand. There was no injury to the right arm. Slight compression fractures occurred to the sixth and eleventh thoracic spines. Plaintiff sus-tained deep wounds in the flesh of his back which left large sensitive scars. As stated, the right leg was not amputated surgically; the bone of the thigh has grown into and become a part of the scar which is discolored, is very painful on pressure and has ulcerated lesions over its surface. Likewise the scar on the left hand and wrist, where plain-tiff's thumb was severed, is tender and sensitive on pressure. There was damage to the great sciatic nerve, causing a lack of nerve force in the left thigh, leg and foot, with consequent atrophy of muscles and demineralization of the bones; the foot is "dropped" and is clawlike.

The ankylosis at plaintiff's hips and knee cause plaintiff's body to be anchored in a stiff position, and it was the opinion of a physician, witness for plaintiff, that plaintiff needs an attendant twenty-four hours of the day, it being impossible for plaintiff to turn over (except to the left) in bed, to care for his private toilet, or to bathe the lower part of his body. He is able to shave himself, bathe his face and upper body. Witnesses, physicians, were of the opinion that plaintiff's disability is total and permanent.

The first problem of the physicians treating plaintiff was to preserve his life. He was treated in the Methodist Hospital of Indianapolis, Indiana, by a physician, regularly employed by defendant, and by a physician called into consultation by defendant's physician and plaintiff's mother. He remained in that hospital a year and two weeks, having spent the first two and a half months in an oxygen tent—his case was complicated by pneumonia. During the time he was in the hospital glucose, sedatives, stimulating drugs and medicines were administered, and 57 blood transfusions were given. Plaintiff was taken from the Methodist Hospital by his mother, and placed in St. Anthony's Hospital at St. Louis where he was treated for a period of ten weeks. Expense of plaintiff's treatment while at the Methodist Hospital was borne by defendant; expense at St. Anthony's Hospital was $500. Since his discharge from St. Anthony's Hospital he has resided at the home of his parents in Indianapolis, where he has been cared for by the members of the family, and by a nurse paid $5.50 or $6.00 for eight hours of the day.

Plaintiff was able to survive his injuries and the treatment of them because of his sound heart, lungs and digestive tract. His heart, so far as physicians can determine, is normal. This fact, together with the fact that the pus of the osteomyelitis is not ▮▮▮ being absorbed by his system, according to a physician, witness for plaintiff, makes his life expectancy quite as great as if he had not sustained his injury —not all of the physicians, witnesses, were in agreement with this, however. Plaintiff, according to the evidence, has suffered no impairment of his mental faculties, heart, lungs or digestive tract. Of his condition plaintiff testified that his health is (at the time of trial) good, "with the exception of being crippled and having all this osteomyelitis." There is a difference of opinion as to the extent the immobile condition of plaintiff may be corrected by reconstructive surgery. Witnesses for plaintiff, physicians, were of the opinion that operations could be performed to relieve the ankylosis at plaintiff's hips and at the knee joint, the joint at the hips being by surgery so separated as to leave a "flail" joint, permitting plaintiff to bend his body and so to sit uprightly. Physicians, witnesses for the defendant, were of the opinion that plaintiff's condition could be relieved by surgery to the extent that a reconstructed socket for the left leg would enable plaintiff to bear weight upon it, permitting his movement

with the aid of crutches. And there is a diversity of opinion upon the question of the practicability of the use of an artificial right limb. The corrective surgery could only be performed progressively, that is, by several operations performed at different times as plaintiff's physical condition may allow. The expense of the surgery, hospitalization, X-ray work and medicines necessary to such operations was estimated by a plaintiff's witness to be from $8700 to $10,100. It is the opinion of physicians that plaintiff is now in such a physical condition that reconstructive surgery could be commenced. The proposed operations include such operative procedures as the cure of the osteomyelitis, the removal of the remainder of the right femur and dissecting out the resulting scar, the removal of dead or diseased bone from the left hip and pelvis, the correction of the left "foot-drop" and of the scar on the left hand and wrist. Of course, these operations would not be unattended by risk.

It is the contention of the plaintiff that the evidence tends to show that he will be required to expend the sum of $10,000 yearly throughout his life for surgery, hospitalization, drugs and attendants. We cannot infer the probable necessity for such an expense from the evidence introduced. The evidence shows, however, that the plaintiff has suffered grave, permanent and most painful injuries which have necessitated, and will necessitate, surgical and medical treatment. His injuries have totally disabled him from the performance of physical tasks. His condition at the time of trial warrants the inference that he will continue to need the service of an attendant, at least unless and until he submits to further surgery which may or may not successfully alleviate the infected and immobile condition of his hips.

Plaintiff's injuries would entitle him to a very substantial award.

Money cannot effect the restoration of the plaintiff's physical well being. None would exchange a sound physical condition for any sum of money. All courts hold the recovery is measured by that which is "fair and reasonable compensation." Money can only provide for a livelihood, and for care and comforts to ameliorate his suffering. There is no mathematical formula by which the amount of compensation in a case of serious and permanent injury can be accurately determined. Fair and reasonable compensation in each case must rest upon the foundation of the facts of the case. Yet some consideration must be given to the amounts of award which have been held to be fair and reasonable compensation where plaintiffs have suffered similar injuries. There should be reasonable uniformity as to the amounts of verdicts. Goslin v. Kurn, supra; Morris v. E. I. DuPont de Nemours & Co., 346 Mo. 126, 139 S. W. 2d 984; Aly v. Terminal R. R. Ass'n. of St. Louis, 342 Mo. 1116, 119 S. W. 2d 363.

Counsel for the parties do not call our attention to a case in which an award for personal injuries of more than $50,000 has been approved by this court. A verdict of $50,000 was held to be within

the measure of reasonable compensation in the case of Span v. Jackson, Walker Coal & Mining Co. (1928), 322 Mo. 158, 16 S. W. 2d 190. We do not cite the case as determining the minimum or maximum of the measure of compensation in the case at bar, and desire that this court be of untrammeled and just decision, in determining that which constitutes a reasonable award, according to the particular facts of a cause as viewed in relation to economic conditions and with a regard to a reasonable uniformity. (a) We cannot say the injuries of plaintiff herein are comparable to the injuries of the plaintiff in the Span case—we have said that the condition of the plaintiff in the Span case was hopeless. West v. Kurn (Mo. Sup.), 148 S. W. 2d 752 at page 757. (b) Plaintiff in the Span case was an older man when he was injured than was plaintiff herein. (c) Plaintiff in the Span case was earning less at the time of injury than was plaintiff in the case at bar.

Cases from other jurisdictions have been cited in which amounts equal to or in excess of the award in the Span case have been approved as reasonable for grave, painful and permanent injuries. $50,000, Lindemann v. San Joaquin Cotton Oil Co. (1936), 5 Cal. 2d 480, 55 P. 2d 870; $50,000, McKeon v. Delaware, L. & W. R. Co. (1924), 100 N. J. L. 258, 127 A. 34; $50,000, Kirschbaum v. McCarthy (1936), 5 Cal. 2d 191, 54 P. 2d 8; $50,000, Carlson v. Sun-Maid Growers' Ass'n. (1932), 121 Cal. App. 719, 9 P. 2d 546; $50,000, Budek v. City of Chicago (1935), 279 Ill. App. 410; $55,000, Fried v. New York, New Haven & Hartford R. R. Co. (1918), 183 App. Div. 115, 170 N. Y. S. 697, affirmed 130 N. E. 917; $58,800, Taylor v. Atchison, T. & S. F. Ry. Co. (1937), 292 Ill. App. 457, 11 N. E. 2d 610; $60,000, Goldberg v. Capital Freight Lines (1942), 314 Ill. App. 347, 41 N. E. 2d 302; $60,000, Gourley v. Chicago & E. I. Ry. Co. (1938), 295 Ill. App. 160, 14 N. E. 2d 842; $60,000, Ward v. Iroquois Gas Corp. (1931), 233 App. Div. 127, 251 N. Y. S. 300; $62,500, Zamecnik v. Royal Transit, Inc. (1941), 239 Wis. 175, 300 N. W. 277; $72,500, Grinnell v. Carbide & Carbon Chemicals Corp. (1937), 282 Mich. 509, 276 N. W. 535; $75,000, Toledo, C. & O. R. R. Co. v. Miller (1923), 108 Ohio St. 388, 140 N. E. 617; $75,000, Princell v. Pickwick Greyhound Lines (1931), 262 Ill. App. 298; $76,112, Fulton v. Chouteau County Farmers' Co. (1934), 98 Mont. 48, 37 P. 2d 1025; $100,000, O'Connell v. Westinghouse X-ray Co. (1939), 16 N. Y. S. 2d 54; $100,000, McDonald v. Standard Gas Engine Co. (1935), 8 Cal. App. 2d 464, 47 P. 2d 777. Observe that in none was the award for so much as half of that awarded by the jury in the case at bar. We feel that the verdict $203,167 must be viewed as excessive to the extent of many thousands of dollars. As we have stated, a trial court, having had opportunity to observe the effect of the trial proceedings, may infer bias and prejudice from the size of the verdict alone; and we believe that we are not justified, under

the record in the case at bar, in holding that in so inferring and ruling the trial court was arbitrary.

The order granting the new trial should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.