MICHAEL TIMPANO, Respondent, *v.* DAVID STEVENSON BREWING COMPANY, Appellant.

*Judgment — counterclaim — action may not be maintained on matter set up as counterclaim in prior action after judgment therein.*

Appeal by the defendant from a judgment of the Municipal Court of the city of New York, borough of Brooklyn, in favor of the plaintiff for the sum of $119.40, damages and costs. The case was tried without a jury.

PER CURIAM: The claim upon which the judgment appealed from was rendered was clearly litigated between the parties in a prior action for the foreclosure of a mortgage in the Supreme Court, in which suit the plaintiff herein was defendant. In his answer in that case he set up as a counterclaim the same claim upon which the present suit was brought, and the matter was there litigated to a conclusion. The plaintiff herein is bound by that decree. It follows that the judgment must be reversed and a new trial granted, costs to abide the event. Woodward, Jenks, Hooker and Miller, JJ., concurred; Hirschberg, P. J., not voting. Judgment of the Municipal Court reversed and new trial ordered, costs to abide the event.

---

WILLIAM T. DICKERSON, Respondent, *v.* ROBERT APPLETON and ROBERT APPLETON COMPANY, Appellants.

*Contract — action on agreement by incorporator to give promoter a certain share of all stock to be received by him — corporation — estoppel from questioning its own certificate that all stock was full paid and issued for property.*

Appeal by the defendants from a judgment of the Supreme Court in favor of the plaintiff, dated the 30th day of March, 1907, and entered in the Kings county clerk's office upon the decision of the court rendered after a trial at the Kings County Special Term.

Judgment affirmed, with costs, upon the opinion of Mr. Justice Kelly at Special Term. Woodward, Jenks, Hooker, Gaynor and Rich, JJ., concurred.

The following is the opinion delivered at Special Term:

KELLY, J.: In this case I reach the following conclusions: I think Rev. Father Wynne originated the idea of the publication of the encyclopædia; that he consulted with the plaintiff regarding the publication from a business point of view, and that the plaintiff at his request undertook to procure such publication through association with publishers and other persons experienced in the busi-

ness; that what the arrangement contemplated was the formation of a corporation, the capital stock of which was to be divided so that the editorial end of the management should control, owning fifty-one and one-half per cent, the balance to go to the business end of said agreement. In these negotiations Rev. Father Wynne represented the editorial end. The plaintiff had enlisted the defendant Robert Appleton in the enterprise and the defendant, said Appleton, represented the business end. In all the negotiations Father Wynne insisted that he should not be bound by any agreement save on the condition that it be finally approved by the board of directors of the new company when selected. There was no partnership between Father Wynne and the plaintiff or defendant Appleton, but Father Wynne assented to plaintiff's undertaking the formation of a company to publish the book, and plaintiff rendered various services to the enterprise leading up to and assisting in the final formation of the defendant company. It was the plaintiff who first called the defendant Appleton's attention to the matter; he introduced Appleton to Father Wynne; he engaged offices and obtained various data and information useful to the enterprise. It was the original intention of the parties that plaintiff should become vice-president of the new company, but this was all tentative and dependent on the approval of the directors of the new company when chosen. But I find that there was a binding agreement based on valuable consideration between the defendant Appleton and the plaintiff, that plaintiff should share in the capital stock issued to the business end of the enterprise, and that Appleton agreed that plaintiff should receive one-half of whatever stock he, Appleton, received up to $17,500. When the corporation defendant was finally organized, the directors did not assent to plaintiff's presence in the management. Appleton was accepted; he became president. The company was capitalized at $100,000. The rights of Father Wynne, the idea of the publication, the contracts with the editors, the plans, papers and the result of the labors of Appleton, Crowley and the plaintiff were all turned over to Appleton, who in turn transferred them to the corporation in consideration of the issuance to him of the entire capital stock. This was carried out, the stock was issued as full-paid stock and the defendant corporation has certified in accordance with law that all its stock has been issued for property. The corporation cannot be heard to contradict its own declaration verified by Appleton, its president, and filed in the public offices. It must be held that this stock belongs to Appleton and was issued for value. He could do what he liked with it. He could transfer it to whomsoever he wished to receive it, but the corporation had parted with it. The company could, if it had seen fit, have issued but one-half or three-quarters of its stock to Appleton, for the property transferred to it. On the contrary, it issued all of the stock to Appleton, and the fact that certificates for 220 shares were never issued does not alter the situation. The stock belongs to Appleton so far as the company is concerned. Appleton has agreed to divide up his stock. In accordance with the original understanding he has transferred the agreed portion to the editorial end of the enterprise. Out of the remainder he has turned over to Mr. Crowley his share as agreed upon. But he has not transferred to the plaintiff or to any one else the 175 shares to which the plaintiff is entitled out of Appleton's holdings. Before Appleton can voluntarily sur-

render his stock to the company or its appointees he must carry out his agreement with the plaintiff. I do not think Appleton can be heard to deny plaintiff's services to him at any rate; if not to the company. Plaintiff was the means of introducing Appleton in the first place. Appleton does not deny the agreement to give plaintiff 175 shares of any stock he might receive. The fact that the plaintiff was not acceptable to the board of directors of the corporation may have relieved the corporation of further responsibility to him, but it did not relieve Appleton of his responsibility. It might have been better if Appleton had said to the board of directors that he was obligated to turn over to plaintiff one-half of any stock which he might acquire up to 175 shares. Possibly the company might have then made a different bargain with him. He did not inform them, as far as the evidence indicates, and I do not see how they can be heard to question the validity of the issue of the entire stock to him for value. They cannot control the rights of the plaintiff as against Appleton, and before he can agree to turn the stock back, or consent to its issuance to appointees of the directors, he must fulfill his obligations to the plaintiff. As already suggested, the corporation might have issued to Appleton but $75,000 of the capital, retaining $25,000 in the treasury for further disposition. Whether the fault be with Appleton for not informing the directors of the claims of plaintiff on any stock issued to him, Appleton, or not, I cannot say, but I have no difficulty in finding that Appleton made the agreement alleged, and I can see no reason why he should not carry it out. I had some doubt as to whether plaintiff's rights were not confined to the stock actually retained by Appleton to the end, but I think his right is not so limited and that the defendants cannot contradict their own resolutions and certificates upon which their existence as a corporation depends. The learned counsel for the defendants insists that the proof is not in accord with the allegations in the complaint. The pleading in question is certainly very much involved and intricate in its method of stating the plaintiff's grievances, but I think he makes out a case fairly within his pleading. There should be judgment for the plaintiff establishing his ownership in 175 shares of the stock now unissued but belonging to Appleton, and certificates for such stock should be issued to him. Costs are awarded against defendant Appleton. Prepare findings and decree in accordance with this memorandum.