Ninety-Fifth street distant 168 feet westerly from the corner formed by the intersection of the westerly line of Amsterdam avenue and the northerly side of Ninety-Fifth street, running thence westerly to the center of the old Bloomingdale Road; so that it is quite clear that none of the property described in the complaint was ever conveyed by Cohen to Doyle, by Doyle to Lynes, or by the executors of Lynes to Disch.

On their face these alleged tax leases were void, the statute not being complied with, and the only question that presents any doubt is whether the alleged possession by Disch of the premises described in the complaint or any portion of them was adverse to the title of the trustees of Lipman when they executed and delivered the deed dated February 7, 1906, to Behn. It was found in relation to this possession that from 1893 to 1904 Webber & Bunke were in actual possession and occupation of the premises described in the complaint for storage purposes, and paid rent therefor to William Cohen. At about November 1, 1904, Ludwig Frederick began to occupy the premises for storage purposes in connection with his business, and he paid rent therefor to Webber & Bunke, who held under Cohen. Defendant Disch obtained this deed from the executors of Lipman in September, 1902, and in 1906 he got assignments of certain tax leases of these premises. It is too well settled to be questioned that possession under a tax lease is not adverse to the real owner of the property; so that Disch's possession under the tax lease was not adverse. The court refused to find that Disch's possession of the property was adverse to the real owners, and there was nothing in evidence that required such a finding. The defendant Disch set up the right to possession under these tax leases, and plaintiff by reply denied the existence of the tax leases. Plaintiff was clearly entitled to show under this denial that the tax leases were not, and never had been, valid, and, as I think the tax leases were void, the finding of the trial court is sustained by the evidence. Defendant Disch seems to think that in some way he can avoid the conveyance to plaintiff's grantor upon the ground that it was obtained by fraud; but, as the grantor makes no such claim, the conveyance was sufficient to pass the title to the property. There is no real question as to the title of plaintiff and defendant Behn to the property in question, and the possession of the defendant Disch was not really adverse, was not based upon a real claim of title, and should not have been allowed to defeat the title of the real owners.

This judgment was therefore right, and should be affirmed, with costs. All concur.

---

### DICKERSON v. APPLETON et al.

(Supreme Court, Appellate Division, Second Department. December 23, 1907.)

1. CORPORATIONS—AGREEMENTS BETWEEN PROMOTERS—CONSIDERATION.

An agreement by defendant to give plaintiff half the shares allotted to him in a proposed corporation was valid, and based on a valuable consideration, where plaintiff interested defendant in the publication of the book to be published by the corporation and introduced him to the compiler thereof, and engaged offices and collected various data for the enterprise

2. CORPORATIONS—INCORPORATION AND ORGANIZATION — AGREEMENTS AMONG
PROMOTERS.

Plaintiff, defendant, and others organized a corporation to publish an
encyclopedia, and it was agreed that 51 per cent. of the stock should be is-
sued to such others and the remainder to the business end of the manage-
ment, represented by plaintiff and defendant; defendant agreeing to share
half of this stock with plaintiff. The corporation was organized, and de-
fendant, who was elected president thereof, transferred the results of
the labor of himself, plaintiff, and the others to the corporation in con-
sideration of the issuance to him of the entire capital stock, which he
transferred in part to the other promoters under their prior agreements,
but did not share his part of the stock with plaintiff. *Held*, plaintiff was
entitled under their agreement to half of the stock issued to a defend-
ant before the latter would be permitted to surrender his stock to the
company.

3. SAME—ISSUE OF CERTIFICATES—OWNERSHIP OF SHARES.

The fact that certificates were not issued for 220 shares of the entire
capital stock issued to defendant did not affect his liability to plaintiff
under their agreement, since defendant was nevertheless the owner of the
stock as against the company.

4. SAME—AGREEMENT AMONG PROMOTERS.

Defendant's liability to transfer half his shares to plaintiff under their
agreement was not affected by plaintiff not being elected to the manage-
ment of the concern as the parties had anticipated at the time.

5. SAME—TRANSFER OF SHARES—ESTOPPEL TO DENY TRANSFER.

Where the president of a corporation transferred to the corporation as
assets the result of the labors of the promoters in consideration of the is-
suance to him of the entire capital stock, in an action upon an agreement
by such president to divide his share of the stock with a promoter, the
corporation is estopped to deny that it issued the stock to its president for
value.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §
454.]

Appeal from Special Term.

Action by William T. Dickerson against Robert Appleton and others.
From a judgment in favor of plaintiff, defendant appeals. Affirmed.

The following is the opinion of Kelly, J., at Special Term:

In this case I reach the following conclusions:

I think the Reverend Father Wynne originated the idea of the publication
of the encyclopedia; that he consulted with the plaintiff regarding the publica-
tion from a business point of view, and that the plaintiff, at his request, under-
took to procure such publication through association with publishers and
other persons experienced in the business; that the arrangement contemplated
was the formation of a corporation, the capital stock of which was to be di-
vided, so that the editorial end of the management should control, owning
51½ per cent., the balance to go to the business end of said management. In
these negotiations Rev. Father Wynne represented the editorial end. The
plaintiff had enlisted the defendant Robert Appleton in the enterprise, and
the plaintiff and said Appleton represented the business end. In all the nego-
tiations Father Wynne insisted that he should not be bound by any agreement,
save on the condition that it be finally approved by the board of directors of
the new company, when selected. There was no partnership between Father
Wynne and the plaintiff or defendant Appleton, but Father Wynne assented
to plaintiff's undertaking the formation of a company to publish the book,
and plaintiff rendered various services to the enterprise leading up to, and
assisting in the final formation of the defendant company. It was the plain-
tiff who first called the defendant Appleton's attention to the matter. He in-
troduced Appleton to Father Wynne. He e        d offices, and obtained various
data and information useful to the enterp       t was the original intention

of the parties that plaintiff should become vice president of the new company, but this was all tentative, and dependent upon the approval of the directors of the new company when chosen.

But I find that there was a binding agreement, based on valuable consideration, between the defendant Appleton and the plaintiff, that plaintiff should share in the capital stock issued to the business end of the enterprise, and that Appleton agreed that plaintiff should receive one-half of whatever stock he, Appleton, received up to $17,500. When the corporation defendant was finally organized, the directors did not assent to plaintiff's presence in the management. Appleton was accepted. He became president. The company was capitalized at $100,000. The rights of Father Wynne—the idea of the publication—the contracts with the editors, the plans, papers, and the result of the labors of Appleton, Crowley, and the plaintiff, were all turned over to Appleton, who, in turn, transferred them to the corporation in consideration of the issuance to him of the entire capital stock. This was carried out, the stock was issued as full paid stock, and the defendant corporation has certified, in accordance with law, that all its stock has been issued for property. The corporation cannot be heard to contradict its own declaration, verified by Appleton, its president, and filed in the public offices. It must be held that this stock belongs to Appleton, and was issued for value. He could do what he liked with it. He could transfer it to whomsoever he wished to receive it, but the corporation had parted with it. The company could, if it had seen fit, have issued but one-half or three-quarters of its stock to Appleton for the property transferred to it. On the contrary, it issued all of the stock to Appleton, and the fact that certificates for 220 shares were never issued does not alter the situation. The stock belongs to Appleton, so far as the company is concerned. Appleton has agreed to divide up his stock. In accordance with the original understanding he has transferred the agreed portion to the editorial end of the enterprise. Out of the remainder he has turned over to Mr. Crowley his share, as agreed upon. But he has not transferred to the plaintiff, or to any one else, the 175 shares to which he, plaintiff, is entitled out of Appleton's holdings. Before Appleton can voluntarily surrender his stock to the company or its appointees, he must carry out his agreement with the plaintiff. I do not think Appleton can be heard to deny plaintiff's services to him at any rate, if not to the company. Plaintiff was the means of introducing Appleton in the first place. Appleton does not deny the agreement to give plaintiff 175 shares of any stock he might receive. The fact that the plaintiff was not acceptable to the board of directors of the corporation may have relieved the corporation of further responsibility to him, but it did not relieve Appleton of his responsibility. It might have been better if Appleton had said to the board of directors that he was obliged to turn over to plaintiff one-half of any stock which he might acquire up to 175 shares. Possibly the company might have then made a different bargain with him. He did not inform them, as far as the evidence indicates, and I do not see how they can be heard to question the validity of the issue of the entire stock to him for value. They cannot control the rights of the plaintiff as against Appleton, and before he can agree to turn the stock back, or consent to its issuance to appointees of the directors, he must fulfill his obligations to the plaintiff. As already suggested, the corporation might have issued to Appleton but $75,000 of the capital, retaining $25,000 in the treasury for future disposition. Whether the fault be with Appleton for not informing the directors of the claims of plaintiff on any stock issued to him, Appleton, or not, I cannot say; but I have no difficulty in finding that Appleton made the agreement alleged, and I can see no reason why he should not carry it out. I had some doubt as to whether plaintiff's rights were not confined to the stock actually retained by Appleton in the end, but I think his right is not so limited, and that the defendants cannot contradict their own resolutions and certificates upon which their existence as a corporation depends. The learned counsel for the defendants insist that the proof is not in accord with the allegations in the complaint. The pleading in question is certainly very much involved and intricate in its method of stating the plaintiff's grievances, but I think he makes out a case fairly within his pleading.

There should be judgment for the plaintiff establishing his ownership in 175 shares of the stock now unissued, but belonging to Appleton, and certifi-

eates for such stock should be issued to him. Costs are awarded against defendant Appleton. Prepare findings and decree in accordance with this memorandum.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Gould & Wilkie and Learned Hand, for appellant Robert Appleton.
Philbin, Beekman & Menken and Eugene A. Philbin, for appellant Robert Appleton Company.
George H. Pettit, for appellee.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of Mr. Justice Kelly at Special Term.

---

ARNOLD v. ROCKLAND LAKE TRAP ROCK CO.

(Supreme Court, Appellate Division, Second Department. January 10, 1908.)

1. EVIDENCE—EVIDENCE IN OTHER PROCEEDING—AUTHORITY AT TIME OF ADMISSION.

In a suit to restrain defendant from using "mud blasts" in its quarries, .it was error to put in evidence the testimony of defendant's president, given in a former action between different parties, as to the utility and economy of such blasts, since such statements were not made as agent of defendant, nor in regard to the present controversy.

2. APPEAL—ADMISSION OF IMPROPER EVIDENCE—CURED BY SUBSEQUENT EVIDENCE.

The error in admitting the evidence given by defendant's president on the trial of another action between other parties was not cured by the president subsequently being called to testify in the present case; his testimony relating to matters other than those testified to in the former case.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4171–4177.]

3. EVIDENCE—ADMISSIONS BY AGENT—AUTHORITY.

Declarations by an agent are only admissible against the principal when they are in reference to the matter under inquiry and were made during the continuance of the agency.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 887.]

Appeal from Special Term.
Bill for injunction by Cornelia M. Arnold against the Rockland Lake Trap Rock Company. From a decree in favor of plaintiff, defendant appeals. Reversed, and new trial granted.
Argued before WOODWARD, JENKS, GAYNOR, RICH, and MILLER, JJ.

Charles F. Brown (Harmon S. Graves, on the brief), for appellant.
Frank L. Young, for respondent.

WOODWARD, J. This action was tried at Special Term without a jury, and the justice presiding directed the entry of a decree restraining the defendant from using so-called "mud blasts" in its quarries at· any time, and adjudging such blasts constituted a nuisance. The judgment also awarded the plaintiff damages for injuries done the