GEORGE H. BAILEY, Plaintiff-Appellant, v. INTERSTATE AIRMOTIVE, INC., W. B. DALLAS, PARKER SNEAD and WILLIAM S. SNEAD, Defendants-Respondents.—No. 40851.—219 S. W. (2d) 333.

Division One, March 14, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, April 11, 1949.

*R. H. McRoberts, Bryan, Cave, McPheeters & McRoberts* for defendants-appellants Parker Snead and William S. Snead.

'Lewis, Rice, Tucker, Allen & Chubb, R. Walston Chubb* and *Lyle M. Allen, Jr.,* for plaintiff-appellant.

*Alfred H. Kerth, Kerth & Schreiber* for defendants-respondents Interstate Airmotive, Inc., and W. B. Dallas; *R. H. McRoberts, Bryan, Cave, McPheeters & McRoberts* for defendants-respondents Parker Snead and William S. Snead.

[334] VAN OSDOL, C.—Action to recover $39,800, the alleged reasonable value of services claimed to have been rendered by plaintiff.

Plaintiff's action is on the theory defendants refused to deliver to him 250 shares of common stock of defendant Interstate Airmotive, Inc., which stock, it is alleged by plaintiff, defendants had contracted to deliver to him in compensation for services rendered and to be rendered to the corporation. It is alleged by plaintiff that defendants dismissed him without just cause. He has elected to treat the [335] contract as rescinded by defendants, and seeks recovery in quantum meruit. The jury returned a verdict for $45,000, and plaintiff voluntarily remitted $5200; but the trial court sustained defendants'. motions for a new trial upon specified grounds particularly set out infra. . Plaintiff has appealed from the orders granting the new trial.

. Defendants also severally filed motions to set aside the verdict and judgment for plaintiff, and to render judgment for defendants in accordance with defendants' motions for a directed verdict made at the close of all the evidence in the case. Sections 113 and 120, Civil Code of Missouri, Laws of Missouri 1943, pp. 387 and 389, Mo. R. S. A. §§ 847.113 and 847.120. The motions for judgment for defendants were overruled by the trial court. Defendants have perfected appeals from the orders overruling the motions.

■ We are of the opinion defendants' appeals should be dismissed. Section 126, Civil Code of Missouri, Laws of Missouri 1943, p. 390, Mo. R. S. A. § 847.126, does not provide for an appeal from an order overruling a motion for judgment for defendant. There was no finality of action by the trial court in overruling such motions as authorized appeals. Had defendants' motions for a new trial been overruled, the judgment rendered upon the verdict for plaintiff would have been final, and would have supported appeals by defendants. But the trial court sustained defendants' motions for a new trial, and so defendants were not and are not aggrieved by any appealable final order of the trial court adverse to them. Section 126, Civil Code of Missouri, supra; Vol. 1, Carr Missouri Civil Procedure, § 812, at page 868; Vendt v. Duenke, Mo. App., 210 S. W. 2d 692; Long Mercantile Co. v. Saffron, Mo. App., 104 S. W. 2d 770.

■ The six grounds assigned in the motions for new trial and specified by the trial court in granting a new trial are as follows,

"5. Because the verdict is the result of bias, passion and prejudice on the part of the jury against this defendant. . . . 8. Because the verdict is excessive. 9. Because the verdict is so grossly excessive as to indicate that it was the result of passion and prejudice on the part of the jury. 10. Because the verdict was so glaringly unauthorized by any evidence as to compel a conviction that the jury was poisoned with prejudice and inflamed with resentment against this defendant . . . . 11. Because the verdict is the result of emotion and sympathy for the plaintiff and poison and prejudice against the defendants generated in the minds of the jury by the act of the plaintiff in crying, or appearing to cry, on the witness stand . . . . 12. Because the Court erred in failing to grant the motion to discharge the jury and declare a mistrial . . . when plaintiff, during direct examination by his own counsel, cried, or appeared to cry, on the witness stand and in full view of the jury."

There was, among many other grounds, assigned in each of defendants' several motions for a new trial, the assignment in paragraph 26, "the Court erred . . . in denying the motion of this defendant for a directed verdict . . . offered at the close of all of the evidence . . . ." In this manner the same question raised by defendants' motions for directed verdicts was presented to the trial court; and the trial court, in granting the new trial on the specified grounds, in effect overruled the ground assigned in paragraph 26. King v. Kansas City Life Ins. Co., 350 Mo. 75, 164 S. W. 2d 458; Murphy v. Kroger Grocery & Baking Co., 350 Mo. 1186, 171 S. W. 2d 610. Defendants-respondents urge the trial court acted within its sound discretion in granting the new trial on the specified grounds; but defendants further contend and undertake the burden of showing this court the trial court erred (as assigned in paragraph 26) in overruling the several motions for a directed verdict. We also have

the benefit of the brief filed herein by defendants as appellants urging their several motions for judgment for defendants should have been sustained on the ground that under the pleadings, the law and the evidence plaintiff cannot recover. We observe basic questions raised by the motions for a directed verdict were also presented to the trial court in the motions for a new trial, and in the motions for [336] judgment for defendants in accordance with the motions for directed verdicts.

Even though the trial court acted within its sound discretion in granting the new trial on one or more of the grounds specified in the orders, yet the questions presented and determinative of whether the plaintiff made out a case are basic. Compare Dietrich v. Cape Brewery & Ice Co., 315 Mo. 507, 286 S. W. 38. See also Oganaso v. Mellow, 356 Mo. 228, 201 S. W. 2d 365; Rose v. Thompson, 346 Mo. 395, 141 S. W. 2d 824; and Vendt v. Duenke, supra. In harmony with the purposes of the Civil Code of Missouri (Section 140 (c), Laws of Missouri 1943, Mo. R. S. A. § 847.140; and Supreme Court Rule 3.27) we will examine the evidence to determine, as best we can, whether plaintiff made out a case for the jury. And if the instant record plainly shows plaintiff under the law and the evidence cannot recover, the parties should be spared the trouble and expense of another trial.

Evidence was introduced tending to show that plaintiff, 31 years of age, is an experienced pilot having authority to fly almost every type of aircraft. For about seven years, prior to World War II, he was in the lumber business and used an airplane in connection with the business. During the war he served as an instructor in the Royal Canadian Air Forces for a year and a half, and then served for about four months as a civil pilot with the Field Command at Dallas. He thereafter became a test pilot for Beech Aircraft Corporation, and was so engaged until September, 1944; "he's a good pilot."

In late 1944, plaintiff was employed by Emerson Electric Company as pilot for that company in St. Louis. He piloted a twin-engine Beechcraft executive type airplane, and while so employed he met defendant William S. Snead, vice-president and treasurer of the Emerson Company. Sometime in September 1945, the Emerson Company sold its airplane to defendant W. B. Dallas, and plaintiff worked as a "part-time" pilot for Dallas at a salary of $400 per month. Plaintiff testified he had priorly "talked to" Beech Aircraft on several occasions about the possibility of obtaining a distributorship in the St. Louis area and he had "talked to" Republic Aviation Corporation concerning a "Seabee" agency in St. Louis.

While flying for defendant Dallas, plaintiff informed Dallas that he, plaintiff, was not interested in a flying job permanently but had plans for going into the business of sales and servicing of planes. Defendant Dallas advised that he would let plaintiff have up to $25,000 se-

cured by "a mortgage on the equipment that he put the money up for." Plaintiff later had a conversation with defendant William S. Snead in which that defendant asked if plaintiff had met Snead's son, defendant Parker Snead, who, the father said, was trying to get into the aviation business and who would be interested in going into business with plaintiff. The father said he had a "lot of confidence" in plaintiff's ability. Plaintiff thereafter conferred with defendant Parker Snead, with whom plaintiff went into a partnership arrangement. During this time plaintiff was in process of arranging for the assignment of an unexpired lease of a hangar situate at Lambert Field, and for a direct lease for a longer term.

The parties first effected an incorporation of the Interstate Airmotive, Inc., November 5, 1945. Defendant William S. Snead "suggested we form a corporation." At a later meeting, November 13th, it was planned to have a capitalization of $25,000, plaintiff to subscribe $6,000; defendant Parker Snead to subscribe $6,000; and defendant Dallas "was going to put up the rest of the money." Defendant William S. Snead was advancing his son the $6,000 to pay for the stock subscribed for by the son. Plaintiff was made a director and president of the corporation. The elder Snead, who was not present at the meeting of November 13th, was dissatisfied with the Dallas control and, at a meeting December 3d at the Snead home, it was decided that the corporate "set up" should be changed so that defendants William S. Snead and Dallas were each to "put up" $12,500 to be represented by preferred redeemable stock, 250 shares of par value $100 per share; and that 500 shares of common stock would be issued. "Mr. (William S.) Snead said the only way to [337] do it was to have them (defendants William S. Snead and Dallas) put up the money, represented by preferred stock and the common stock should go to Parker and me fifty-fifty. . . . Mr. (William S.) Snead said . . . their putting the money up by preferred stock, would allow Parker and me to have the common stock for services and starting the organization." Defendant William S. Snead's attorney was directed to so effect an amendment of the articles of incorporation. The minutes of the directors' meeting of December 3d recite that plaintiff and Parker Snead "had devoted considerable time, effort and expense to organizing the company, obtaining leases of the company's plant, franchises, et cetera." The minutes also recite an adopted resolution, as follows,

"that the company issue to George H. Bailey and to Parker Snead two hundred and fifty shares of the common stock of the company respectively in consideration for their services to the company and that the appropriate officers of the company be and hereby are authorized forthwith to deliver certificates evidencing such stock to said George H. Bailey and Parker Snead."

After the meeting of December 3d, the issued certificates of common stock were brought to plaintiff, president of the corporation, for signature. The certificates bore the names of defendants William S. Snead and Dallas as owners. Plaintiff telephoned defendant William S. Snead and asked why the certificates were not issued to plaintiff and defendant Parker Snead. William S. Snead "laughed and asked if I didn't trust him, the way he was handling the corporation and such and I told him I did. He said not to worry to go on and take care of the business and he would take care of the financial end."

Since the corporation was just being organized and there was no income then being earned, it was agreed that Parker Snead and plaintiff should receive salaries to commence the following January 1st, afterwards deferred to March 1st. As seen supra, it is not to be necessarily inferred the $200 represented the only compensation plaintiff was to receive. In this connection there was also evidence tending to show that William S. Snead, in the presence of plaintiff and defendant Parker Snead, had explained that plaintiff's and defendant Parker Snead's compensation "was coming from the common stock." Plaintiff received, while he was connected with the corporation, salary for one month. Dissension developed between plaintiff and defendants. January 14, 1946, defendant Dallas was made president, and plaintiff vice-president of the corporate defendant. In March, defendant Dallas told plaintiff that he, Dallas, "had me just where he wanted me and that there was nothing I could do about it." April 23d, defendants demanded plaintiff's resignation. Plaintiff refused to resign, and requested 250 shares of common stock. Defendant William S. Snead testified, "I think I turned to Dr. Dallas and said 'there is nothing to do but discharge him.'" Plaintiff was discharged, and was tendered a further $200 check which he later returned through his counsel.

There was substantial evidence introduced tending to show that the efforts of plaintiff and his experience and reputation as a pilot were effective in the procurance of the lease of the hangar, and of the distributorships of planes produced by Beech Aircraft Corporation and Republic Aviation Corporation; that plaintiff "worked up" sales of planes, and attended to the rentals and charges for the storage and servicing of planes; that plaintiff negotiated an agency for the sale of gasoline and oil; that plaintiff gave his time, his energy and attention to the business; and that plaintiff's discharge was wrongful and actuated by a desire to "eliminate" plaintiff and his interest in the business.

Plaintiff's witness, Remmert, was of the opinion plaintiff's services were of the reasonable value of $40,000.

In their brief (adopted by defendants Interstate Airmotive and W. B. Dallas) defendants William S. and Parker Snead (as ap-

pellants) contend that plaintiff cannot recover in quantum meruit against them individually for the services rendered Interstate Airmotive without proof of an express contract on their part to compensate plaintiff; that plaintiff's own testimony not only fails to show an express contract on the part of such defendants, but affirmatively [338] shows there was no such contract; that plaintiff has not pleaded the corporate entity of defendant Interstate Airmotive should be disregarded, and so cannot recover against such defendants on that theory; and that, moreover, a disregarding of the corporate entity would not establish an express contract on the part of defendants William S. Snead and Parker Snead, the establishment of which (express contract) is essential, they say, to plaintiff's recovery in quantum meruit as against them.

It is said in defendants' brief that if plaintiff were able to prove the individual defendants had entered into an express contract to personally compensate plaintiff for his services rendered, then, "under certain circumstances, which need not be here discussed, plaintiff could waive the express contract and sue in quantum meruit." And much is made by defendants of the fact an instruction required the jury to find for such individual defendants as had made "no express contract or agreement" to compensate plaintiff. It is true, as defendants urge, the plaintiff's action is in quantum meruit for services rendered the corporation, and that the corporation expressly undertook by the minute of December 3d to compensate plaintiff by the issuance of the 250 shares; and that the corporation also became obligated to pay plaintiff a salary of $200 per month beginning March 1, 1946. And it might be conceded that, the corporation having thus expressly agreed to compensate plaintiff, the *law* will not imply a contract of the individual defendants to compensate plaintiff. Such is the general effect of cases cited by defendants. This does not mean the individual defendants were not personally obligated by contract (not quasi, but implied in fact) if the circumstances and the acts, words and conduct of the individual defendants and plaintiff were sufficient to support the reasonable inference of a mutual understanding and agreement on the part of the individual defendants that plaintiff should have the shares for his services.

A true contract is said to be express or implied in fact, and differs from a quasi contract which it is said is no "contract at all" but which is commonly called a contract implied in law. There is no difference in legal effect between an express contract and one implied in fact. The distinction lies merely in the manner of manifesting mutual assent. Anderson v. Caldwell, 242 Mo. 201, 146 S. W. 444; Vol. I, Williston on Contracts, § 3, pp. 6-10; Vol. 1, Restatement of the Law of Contracts, § 5, p. 7. See also Stobie v. Earp, 110 Mo. App. 73, 83 S. W. 1097.

As seen from the evidence detailed supra, it could be reasonably found that plaintiff (and defendant Parker Snead), before and after the incorporation of Interstate Airmotive, performed services of substantial value. Their services prior to incorporation are recognized in the minutes of December 3d. The results of their efforts, upon the completion of the incorporation, directly inured to the benefit of the corporate defendant, but such benefits indirectly inured to the stockholders. Obviously, plaintiff's first efforts were for the benefit of himself and his copartner Parker Snead. Plaintiff had an interest in the business. The individual defendants, William S. Snead and Dallas, were to supply the necessary money, it seems.

: Giving credence to the testimony of plaintiff, and having regard for the circumstances we have detailed supra, it is not too much to say it could be reasonably inferred that at the meeting of December 3d the incorporators, plaintiff and individual defendants, mutually agreed that the preferred redeemable stock should represent the amounts to be paid by defendants William S. Snead and Dallas; and that the shares of common stock were to be issued to plaintiff and defendant Parker Snead in compensation for their services in starting and carrying on the business then being taken over by the corporate defendant. The substantiality of the bases for such inferences is corroborated by the quoted minute. If defendants contracted and refused to compensate plaintiff (by the delivery of the half of the common stock) for his services rendered and to be rendered, and without good cause discharged plaintiff depriving him of the benefits of the contract, plaintiff was not obliged to bring action [339] on a claim for damages for breach of the contract. He could elect to treat the contract as rescinded by defendants, and seek the recovery of the value of the services rendered. Ehrlich v. Aetna Life Ins. Co., 88 Mo. 249. See also Fuhler v. Gohman & Levine Cons. Co., 346 Mo. 588, 142 S. W. 2d 482; Kansas City Structural Steel Co. v. Athletic Bldg. Ass'n., 297 Mo. 615, 249 S. W. 922; and Rodgers v. Levy, Mo. App., 199 S. W. 2d 79.

The parties plaintiff and individual defendants, since a time prior to November 5, 1945, were in process of changing the organization of the business from a partnership to a corporation, and had occasion November 13th and December 3d to change or vary the corporate structure and modify the plan of capitalization. All of the parties, individual defendants, to the alleged agreement with plaintiff were subsequently officers or stockholders and in control of the corporation. It seems the four incorporators were agreeing among themselves that the incorporators, William S. Snead and Dallas, would pay in money for which, it was agreed, they were to receive preferred stock; and the incorporators, plaintiff and defendant Parker Snead, were to "pay in" their past and future services for which, it was agreed, they were to receive common stock. Such an agree-

ment, if made by them, was valid and binding and enforceable each against the others. Vol. 1, Fletcher Cyclopedia Corporations, Perm. Ed., § 191, pp. 601-608; Eden v. Miller, C. C. A. 2d, 37 F. 2d 8; Larkin v. Maclellan, 140 Md. 570, 118 Atl. 181; Dickerson v. Appleton, 123 App. Div. 903, 108 N. Y. Supp. 293; Conover v. Smith, 83 Cal. App. 227, 256 Pac. 835. The parties to the alleged agreement, plaintiff and individual defendants, were not "promoters" in a sense, inasmuch as the corporate defendant, we infer, technically became a corporate entity November 5th; even so, no rights of third persons were affected, and the agreement, if so, of the incorporators among themselves individually was nevertheless binding among them. Vol. 1, Fletcher Cyclopedia Corporations, Perm. Ed., § 46, pp. 173-176.; Larkin v. Maclellan, supra; Hladovec v. Paul, 222 Ill. 254, 78 N. E. 619. And see Holland Land & Loan Co. v. Holland, Mo. App., 274 S. W. 951, transferred to Supreme Court, 317 Mo. 951, 298 S. W. 39.

■ Now we believe it would be too ingenious to say, that merely because the corporation and its appropriate officers, as shown by its directors' minutes, were directed to issue and deliver certificates of common stock to plaintiff (and to defendant Parker Snead) "in consideration for their services," that the individual defendants were discharged from their agreement that plaintiff should have half of the common stock to be issued by the corporation as compensation for his services. It must be clear, if it were found that the individual defendants had so agreed, that by such an agreement they, who subsequently were to be in control of the corporate affairs, became obligated to cause the corporation upon its organization, or reorganization, to issue and deliver the certificate of common shares to plaintiff. Compare Timmonds v. Wilbur, Mo. Sup., 260 S. W. 1004. But there was substantial evidence tending to show the individual defendants, when the plan of recapitalization and organization of December 3d was consummated, did not cause the certificates evidencing the half of the common stock to be issued to plaintiff, but, on the contrary, caused the certificates to be issued to defendants W. S. Snead and Dallas, and caused the wrongful discharge of plaintiff.

Having considered the evidence from a standpoint favorable to plaintiff, we are of the opinion that a meritorious claim in plaintiff and against all of defendants lies within the purview of the pleadings, the law and the evidence. We hold the trial court did not err in overruling defendants' several motions for a directed verdict.

■ The trial court, in passing on a motion for a new trial, has a discretion with respect to questions of fact and matters affecting the determination of issues of fact; but it may not exercise its discretion arbitrarily or injudiciously, and may not be permitted to set aside the verdict of a jury unless some legal ground is shown which

may properly be the basis for such action. Schipper v. Brashear Truck Co., Mo. Sup., 132 S. W. 2d 993; McDonald v. Heinemann, Mo. App., 141 [340] S. W. 2d 177. Where a trial court is satisfied a verdict is a result of bias, passion or prejudice, it is the trial court's duty to grant a new trial; and, if the trial court in the exercise of its discretion grants a new trial on that ground, an appellate court will not interfere, except in a case where it is clear the trial court has abused or arbitrarily exercised its discretion. Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S W. 2d 157; Aeolian Co. of Missouri v. Boyd, Mo. App., 138 S. W. 2d 692. See also King v. Kansas City Life Ins. Co., 350 Mo. 75 at page 87, 164 S. W. 2d 458 at page 464, and cases there cited. ·

In Missouri it is the practice to cure the error of excessive verdicts by enforced remittiturs. Joice v. M.-K.-T. R. Co., 354 Mo. 439, 189 S. W. 2d 568; Jones v. Pennsylvania R. Co., supra; King v. Kansas City Life Ins. Co., supra; Sofian v. Douglas, 324 Mo. 258, 23 S. W. 2d 126. It is clear there is a vital distinction between mere excessiveness (or inadequacy) of an award, and such excessiveness (or inadequacy) as would indicate a verdict was the result of bias and prejudice; the former may be but an honest mistake of the jury, while the latter savors of misbehavior on the part of the jury. A fair, dispassionate and impartial consideration of the evidence by a jury is vital to a verdict's incipient validity. Stokes v. Wabash R. Co., 355 Mo. 602, 197 S. W. 2d 304; Jones v. Pennsylania R. Co., supra, 353 Mo. at page 172, 182 S. W. 2d at page 159, and cases there cited.

The trial court in considering the size of the award may pass on the weight of the evidence. Murphy v. Kroger Grocery & Baking Co., supra; King v. Kansas City Life Ins. Co., supra; Sofian v. Douglas, supra; Dietrich v. Cape Brewery & Ice Co., supra. And we bear in mind the trial judge participated in the trial and knew what took place, much of which cannot be preserved in any record. It has been said that, in view of the trial court's opportunity to measure the general effect of the trial proceedings on the jury, the trial court may infer bias and prejudice from the size of the verdict alone. Jones v. Pennsylvania R. Co., supra.; Sofian v. Douglas, supra; Aeolian Co. of Missouri v. Boyd, supra.

In the instant case the jury's award, $45,000, was $5,200 in excess of the amount plaintiff sought for his alleged services; and $5,000 in excess of the amount, $40,000, said by the witness Remmert to be the reasonable value of plaintiff's services. We further note the trial court gave prejudicial effect to the circumstance stated in the specified grounds for granting the new trial, paragraphs 11 and 12, supra. We could not say the trial court acted arbitrarily or abused its discretion in granting the new trial.

The defendants' appeals should be dismissed, and the orders granting a new trial should be affirmed.

It is so ordered. *Bradley* and *Dalton*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.