260 S.W.2d 349 (1953)
KRUEGER
v.
ELDER MFG. CO.
No. 28662.
St. Louis Court of Appeals. Missouri.
July 14, 1953.
Motion for Rehearing or to Transfer to Denied and Opinion Modified September 11, 1953.
*350 Harry N. Soffer and Joseph Nessenfeld, St. Louis, for appellant.
Thompson, Mitchell, Thompson & Douglas, St. Louis, Samuel A. Mitchell, Paul M. Cupp and William G. Guerri, St. Louis, for respondent.
Motion for Rehearing or to Transfer to Supreme Court Denied and Opinion Modified September 11, 1953.
ANDERSON, Judge.
This is an action for breach of contract based upon an offer to pay a prize of $5,000 to the best entry in a jingle contest conducted by defendant. Plaintiff received a jury verdict in the trial court and judgment was entered in her favor for $5,680, including interest. Thereafter, the trial court sustained defendant's motion for a new trial, without assigning any ground therefor. Plaintiff has appealed from the order granting a new trial.
The trial court having failed to specify the ground on which it acted, the presumption is that the trial court erroneously granted the motion for new trial and the burden is on respondent to support such action. Supreme Court Rule 1.10. This burden is met if respondent demonstrates that the motion for a new trial should have been sustained on any of the grounds specified in the motion. Goodman v. Allen Cab Co., 360 Mo. 1094, 232 S.W.2d 535. Respondent undertakes in its original and reply briefs to support the correctness of the trial court's order on the following grounds: (1) that the court should have directed a verdict for defendant; (2) that the verdict for plaintiff was against the weight of the evidence; and (3) that the court erred in receiving in evidence plaintiff's conclusion with respect to the ultimate fact before the jury for determination.
Defendant is a manufacturer of boys' wearing apparel which it sells under the trade-mark name of "Tom Sawyer". For the purpose of promoting the sale of its merchandise it instituted a contest called the Tom Sawyer Jingle Contest. The contest consisted of writing a last line to an incomplete jingle on an official entry blank. The Lloyd Herrold Company was designated by defendant as the contest judges, and a number of prizes were offered for the best last lines. The first prize was the sum of $5,000 in cash (or a scholarship, at the option of the winner), which defendant offered to pay to the entrant whose entry was adjudged the best for originality, uniqueness and aptness of thought. The contest was open by its terms from August 1, 1949, to November 15, 1949. The rules of the contest specified that contestants could enter as often as they wished, provided each entry was accompanied by a tag or a label from a Tom Sawyer garment. Other rules specified that the decision of the judges was final and that contestants accepted the conditions of the rules upon entering the contest. Rule 6, which gave rise to the present litigation, set forth the eligibility of entrants to submit entries, and provided as follows: "Mothers, or any adult concerned with buying apparel for boys 2 to 16 may enter, except employees of Elder Mfg. Co., their advertising agency, families thereofand employees and families of any Tom Sawyer retailer."
Plaintiff entered the contest five times. Two of her entries were mailed November 8th or 9th, and the remaining three entries were mailed during the week-end of November 12-13, 1949. Each entry was accompanied by the required tag or label from a Tom Sawyer garment. One of the entries which was mailed on November 12 or 13, 1949, was adjudged the best for originality, uniqueness and aptness of thought by the Lloyd Herrold Company. Thereafter, the defendant questioned plaintiff's eligibility to enter the contest and refused to pay her the prize, on the alleged ground that she was ineligible under Rule 6 for the reason that she was an employee of Stix, Baer & Fuller, a large department store in downtown St. Louis which sells Tom Sawyer garments at retail in one of its departments. The only contested issue at the trial was whether the plaintiff was excluded from entering the contest by the terms of Rule 6.
*351 The facts bearing upon the issue of employment are as follows: In March, 1947, plaintiff decided to seek employment, her husband then being employed out of the city. She applied for employment at Stix, Baer & Fuller and filled out an application blank at the personnel office of that firm. Plaintiff was then told that the store itself had no secretarial position open then but that the Employees' Mutual Aid Association had an opening for a medical secretary, and plaintiff was thereupon referred to the hospital of that association which was located in the store's building.
The Employees' Mutual Aid Association is a corporation separate and distinct from Stix, Baer & Fuller. At the time in question, it operated a hospital on the 10th floor of the store building. Membership in the association was open to employees of the store, but they were not required to join. If they did, the payment of dues was a requirement of membership. In general, the facilities of the hospital were available only to dues-paying members of the association. The association had its own separate bank account, and all regular employees were paid by check drawn on that bank account.
Plaintiff was interviewed by Miss Lillian Chambers, who was the executive secretary of the Employees' Mutual Aid Association, and by one of the doctors who was associated with its hospital. She was told to return the following day for an interview with another doctor. She did so, and was then employed by Miss Chambers to work on behalf of the Employees' Mutual Aid Association. Plaintiff worked a 40-hour week as a full time medical secretary. As such, she took and transcribed dictation of the physicians at the hospital concerning their examination and treatment of patients. The Employees' Mutual Aid Association did no merchandising of any kind whatever.
In July, 1948, plaintiff "quit her full-time job" and at the same time arranged to come in regularly once a week as an extra employee on the regular secretary's day off. This arrangement continued until the latter part of July, 1949, when an Ediphone was installed at the hospital and an arrangement was made whereby plaintiff would work only when called. Plaintiff testified:
"Well, as long as the Ediphone was there they no longer needed a medical secretary in the office, and it was arranged that if they would need anybody Miss Chambers asked if she could feel free to call on me if I would be able to come in occasionally, and I agreed if I could make it that I would come in if she called me."
During the period from August 1, 1949, to November 15, 1949, plaintiff accepted calls from Miss Chambers on nine occasions, working eight hours on each day. She also accepted two calls after the contest closed, the last call being on November 24, 1949.
During the time prior to July, 1948, while plaintiff was a full-time employee at the hospital, she was paid by checks of the Employees' Mutual Aid Association. Part-time employees were not paid by check but were paid in cash which they received in an envelope at the office of the cashier of Stix, Baer & Fuller on the 9th floor of the store building. During the time plaintiff worked as a part-time employee from July, 1948, to August 1, 1949, she was paid in this manner. Prior to August 1, 1949, the amount of cash payments made to part-time employees by Stix, Baer & Fuller was charged by said company to the account of the Employees' Mutual Aid Association.
On August 1, 1949, contributions of employees to the Employees' Mutual Aid Association were discontinued, and at that time all the functions of the Employees' Mutual Aid Association with respect to the operation of the hospital were taken over by Stix, Baer & Fuller. No notice of any kind was given plaintiff that there was any change in the operation of the hospital or in her employment status. Thereafter, the hospital was known as the Stix, Baer & Fuller Medical Center.
The evidence further shows that, like all employees of Stix, Baer & Fuller, plaintiff had an employment number. She had use of and did use the Stix, Baer & Fuller employees' cafeteria. She made use of the *352 employees' discount privilege (20%) that was extended to her and others working in the hospital while it was operated by the Employees' Mutual Aid Association, and later when operated by Stix, Baer & Fuller as the Medical Center. She used the discount privilege on cash purchases as well as on purchases charged to her account. She testified that she "may have" used her discount privilege on the purchase of one of the garments from which she took tags to affix to one of her contest entries.
In support of the trial court's action in granting a new trial it is urged by respondent that such order was proper for the reason that plaintiff failed to make a case for the jury. In support of this contention, it is urged that the evidence showed that plaintiff was, as a matter of law, an employee of Stix, Baer & Fuller during the contest period, and therefore ineligible to compete under Rule 6 of the contest rules.
Appellant contends that since she was originally hired by the Employees' Mutual Aid Association and did not consent to a change of that status when Stix, Baer & Fuller took over the management of the hospital, she could not, as a matter of law, be considered an employee of Stix, Baer & Fuller. It is also urged by appellant that because she did not, after August 1, 1949, have a fixed tenure, but rendered only occasional service, she became an employee at the hospital only on the days she worked, and that since she submitted her contest entries on days she did not work, she was not ineligible under Rule 6.
In construing the word "employees", as used in the contest rule, we must consider the purpose of the rule, the object sought to be accomplished by it, and the context in which the term was used. Empey v. Yost, 182 Wash. 17, 44 P.2d 774; 30 C.J.S., Employee, p. 226. It is clear that, by excluding, among others, employees of any Tom Sawyer retailer from participating in the contest, the rule was designed to increase public confidence and encourage wide participation in the contest by removing any possible suspicion of fraud or collusion on the part of those conducting the contest. Considered in this background, it is apparent that the word "employees" should be interpreted in a broad and nontechnical sense without imposing restrictions and limitations which would emasculate the rule and defeat its purpose.
Rule 6, and its purpose, must also be considered in connection with Rule 4, which designated the contest period as starting on August 1, 1949, and ending on November 15, 1949. Since the purpose of Rule 4 was to avoid suspicion of unfairness and to prevent unfair advantage, it follows that it must have been intended to exclude from participation all persons who at any time during the contest period occupied the status of an "employee" of any Tom Sawyer retailer. If not so construed, the result sought by Rule 4 would not have been accomplishedthere could still remain the suspicion of collusion and the possibility of unfair advantage.
The evidence shows that at all times between August 1, 1949, and November 15, 1949, the hospital where plaintiff worked was operated by Stix, Baer & Fuller and was known as the Stix, Baer & Fuller Medical Center. Plaintiff worked a total of nine full days at said medical center during the contest period and, in doing so, she was performing services for Stix, Baer & Fuller and not for the Employees' Mutual Aid Association by whom she was originally employed. Definite arrangement had been made by her with her immediate superior, and her service was as continuous as the character of the work permitted. When work was to be done, she was called upon to do it. She was clearly a part-time employee of Stix, Baer & Fuller during the contest period, unless it can be said that she was taken out of that category on account of her lack of knowledge of the fact that Stix, Baer & Fuller had taken over the operation of the hospital and the payment of her wages.
It is true that in some cases the identity of the employer cannot be changed without the employee's knowledge and consent. We so held in Reeder v. St. Joseph Lead Co., Mo.App., 260 S.W. 550, a negligence case brought by an employee against his original employer. As between the parties, usually *353 a contract of service, express or implied, is required before one can be considered an employee of another. But the case at bar is not an action by one claiming to be an employee of another to enforce rights as an employee, but is an action against a third party where the term "employee" must be given an interpretation that will effectuate the purpose intended by its use in a contest rule defining the eligibility of contestants. This cannot be done by a narrow technical construction. A proper interpretation requires us to hold that the word "employee" must be given its broad significationmeaning anyone who has, during the contest period, rendered service for Stix, Baer & Fuller, and who, while performing that service, was subject to the control of Stix, Baer & Fuller with respect to the mode, manner and details of the performance of said service. An actual contract is not a requisite in such a situation. 56 C.J.S., Master and Servant, § 2b, p. 31; Winkelstein v. Solitare, 129 N.J.L. 38, 27 A.2d 868.
We hold that plaintiff was an employee of Stix, Baer & Fuller during the contest period. We are also of the opinion that the fact she was not working or drawing pay on the day she sent in her entry did not take her out of the exclusion contained in the offer. Though not working, plaintiff still occupied the status of a part-time employee during the whole contest period and was in a position to profit by unfair advantage, the elimination of which was obviously contemplated by the clause in Rule 6 excluding employees of the defendant's retail customers. Service at any time during the contest period carried with it the possibility of suspicion and fraud, and for that reason should make one performing such service ineligible to compete for said prize. We are of the opinion that plaintiff was an employee within the terms of Rule 6, and therefore disqualified to participate in the jingle contest.
The trial court should have sustained defendant's motion for a directed verdict. In the instant case it appears from the record that plaintiff cannot, under the law and the evidence, recover. It is our judgment that the parties should therefore be spared the trouble and expense of another trial. Under the circumstances, it is our duty to give such judgment as the trial court should have rendered. Section 512.160(3), RSMo 1949, V.A.M.S. Bailey v. Interstate Airmotive, Inc., 358 Mo. 11, 12, 219 S.W.2d 333, 8 A.L.R.2d 710.
The order appealed from is reversed and the cause is remanded with directions to the trial court to enter judgment for defendant.
BENNICK, P. J., and DEW, Sp. J., concur.